## BAKER v. HAYZLETT.

1. **Exemption**: PROPERTY USED TO EARN A LIVING: CHANGE OF OCCU-
PATION. The stock of goods of the plaintiff, who was a retail grocer,
was taken possession of under a chattel mortgage. Although no
contract had been made for plaintiff's services, between him and the
mortgagee, he continued to assist in the business by delivering in person
the goods sold to customers, using therefor a wagon owned and used by
him for the purpose while conducting the business. Two or three days
after surrendering the goods the wagon was levied on by the defendant
under an execution against the plaintiff: *Held* that such wagon was
exempt as property by the use of which the plaintiff earned his living.

*Appeal from Black Hawk District Court.*

MONDAY, DECEMBER 15.

REPLEVIN. The cause was tried to the court without a jury
and a judgment had for plaintiff. Defendant appeals. The
facts appear in the opinion.

*Hemenway, Polk & Thorp,* for appellant.

*S. H. Packard,* for appellee.

BECK, CH. J.—I. The property in controversy, a wagon, was
seized by defendant as sheriff, upon an execution against plain-
tiff, who claims that it was exempt, and brings
this action to recover its possession. The only
evidence offered was the following testimony of the
plaintiff: "I am the plaintiff. Know the property
levied upon by the sheriff; it was a buggy, or half-spring wagon.
When levied upon, I owned it. It was in my possession. I
was delivering goods with it. It was a delivery-wagon, that I
was using delivering goods from the store. I was not at that
time keeping the store. I didn't have charge of it. It was in
the hands of other parties. I was using the wagon at that time
myself and for myself, delivering goods for the store. Was
not the proprietor of the store at the time because it had been

*[margin note: 1. EXEMP-TION: property used to earn a living: change of occupation.]*

taken possession of by Mr. Bates on a mortgage. I was using the wagon to deliver goods for them, I suppose. There was not any arrangement at all made by which I was to retain in possession and have the use of the wagon, because it was right after they had taken possession of the store. The wagon was worth $110.00. I owned no other and was the head of a family.

"I had, previous to that time, been running a grocery store, and there being a chattel mortgage upon the stock it was taken possession of by mortgagee, and soon after the wagon was levied upon by defendant. It might have been a couple of days or the day after they had taken possession of the goods. I had no arrangement for the wagon in any manner, but was staying there for the purpose of assisting in the business. I expected to make an arrangement, but had not done it. Was closing up the settlement of affairs there, and guess I was there about a month after that. It might have been longer, but I wasn't in the store. I was delivering those goods from the store I had been occupying before. I was in the store, but delivered the goods for them as they sold them. Previous to the levy, I had been doing that with this wagon. Had no other, and it had been used for that purpose when I was in the store."

Upon this testimony the court held that the wagon is exempt from execution. The sole question presented in the case is, whether this finding so wants the support of the testimony that the judgment must be reversed.

II. Code, section 3072, provides that "the horse, or team, consisting of not more than two horses, mules, or two yoke of cattle and the wagon, or other vehicle, with the proper harness or tackle, by use of which the debtor, if a physician, public officer, farmer, teamster or other laborer, habitually earns his living," shall be exempt from execution, if the debtor is a resident of the state and the head of a family. The question before

us is this: Did the plaintiff habitually earn his living by the use of the wagon?

It is very plain that plaintiff was dependant upon his personal labor in some capacity for his support. Just at this time there had been a change in his circumstances and from a grocery keeper he became a laborer, or one who was required to serve others. His employment immediately after this change required the use of the wagon. Whether he received or is entitled to receive pay for these services, we need not enquire. Laborers often fail to get pay for their work; because they do work without pay they ought not to be deprived of the rights the law confers upon their class. It may be that plaintiff was delivering the goods with the wagon, without expectation or right to compensation, with the purpose of aiding the mortgagee in turning the goods into money, thus trying to assist in the payment of his debts. A man who in endeavoring to pay his debts is surely trying to earn his living. The only labor done, or services rendered, by plaintiff was by the use of the wagon. Because he had been but a day or two so engaged, and had not completed arrangements for the future, he cannot be deprived of the rights of a laborer. Of necessity he was required to make a beginning in his new way of life, and the moment he did begin he is entitled to the exemptions provided by law. *Bevan v. Hayden, Sheriff, etc.*, 13 Iowa, 122.

The court below gave the following *reason* for its decision. "The wagon having been exempt while plaintiff was engaged in business, the fact of his failure and his subsequent employment did not deprive him of the right of exemption." We cannot concur in this reason. What plaintiff had been, give him no rights in his changed condition, and rights existing under other conditions did not of necessity continue when his conditions were changed. We base his rights upon what he was at the time, the character of his employment, rather than upon what he had been. But because the court gives an

unsound reason for a correct conclusion, which is often done by lawyers, judges, and philosophers, we will not disturb the judgment.

AFFIRMED.