Thomas NELSON, Plaintiff–Appellant,

v.

MERCHANTS BONDING COMPANY, Defendant–Appellee.

MERCHANTS BONDING COMPANY, Third Party Plaintiff–Appellee,

v.

William N. HABHAB, d/b/a Fort Dodge Truck Exchange, Third Party Defendant–Appellant.

No. 87–268.

Court of Appeals of Iowa.

April 20, 1988.

Ned A. Stockdale of Fitzgibbons Brothers, Estherville, for plaintiff-appellant.

F. Richard Lyford of Dickinson, Throckmorton, Parker, Mannheimer and Raife, Des Moines, for defendant-appellee Merchants Bonding Co.

Keith Ferguson of Ferguson Law Office, Dayton, for third party defendant-appellant William Habhab.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

The plaintiff appeals an adverse district court ruling in an action on a motor vehicle dealer's bond. Because this case was tried at law, our review is for the correction of errors at law rather than de novo. Iowa R.App.P. 4. We affirm.

On June 25, 1980, the defendant Merchants Bonding Company (Merchants) issued a motor vehicle dealer bond to William N. Habhab, doing business as Fort Dodge Trucking Exchange, Inc. (Habhab). On approximately March 17, 1983, Habhab acquired parts to a 1976 Kenworth truck-tractor from R.G. Farrell in Southfield, Michigan for $8,000. Habhab received an affidavit of foreclosure of garagekeeper's lien and a bill of sale. Habhab then sold the unit to William Lamb for $8,000. The parts sold by Habhab to Lamb consisted of a cab, frame, chassis, front axle, and rear axle housing. The parts missing included the engine, transmission, both rear-end assemblies, drive shaft, wheels and tires, exhaust system, gear box, fuel tanks, and batteries.

On April 11, 1983, Lamb sold the parts to the plaintiff, Thomas Nelson, for $10,000. Lamb then transferred parts from a truck-tractor owned by Nelson to the unit that Lamb had sold Nelson. The rebuilt truck-tractor was then delivered to Nelson.

On May 4, 1983, the rebuilt truck-tractor was seized by the Iowa Department of Transportation under the belief that it was stolen. Subsequently, this action was brought by Nelson against Habhab's surety on a motor vehicle dealer's bond, seeking damages suffered during the period the truck was seized. Nelson claimed damages due to Habhab's alleged failure to provide the certificate of title to Lamb. Nelson brought the suit against Merchants as the assignee of any claim Lamb might have had against Habhab.

The issue on appeal is whether the assembly of truck parts sold by Habhab to Lamb constituted a "vehicle," thereby requiring Habhab to make application for a certificate of title pursuant to Iowa Code section 321.48(2). Several statutes are relevant to this case. The action brought by Nelson claiming indemnity from Habhab's surety was based on section 322.4(7) of the Iowa Code which provides:

Before the issuance of a motor vehicle dealer's license to a dealer engaged in the sale of vehicles for which a certificate of title is required under chapter 321, the applicant shall furnish a surety bond executed by the applicant as principal and executed by a corporate surety company, licensed and qualified to do business within this state, which bond shall run to the state of Iowa, be in the amount of twenty-five thousand dollars and be conditioned upon the faithful compliance by the applicant as a dealer with all of the statutes of this state regulating or applicable to the business of a dealer in *motor vehicles*, and indemnifying any person who buys a *motor vehicle* from the dealer from any loss or damage occasioned by the failure of the dealer to comply with any of the provisions of chapter 321 and this chapter, including, but not limited to, the furnishing of a

proper and valid certificate of title to the *motor vehicle* involved in a transaction. The bond shall be filed with the department prior to the issuance of a license. The aggregate liability of the surety, however, shall not exceed the amount of the bond. (emphasis added).

The Iowa Code also requires that when transferring a vehicle by sale, one must deliver the certificate of title as well:

No person, except as provided in sections 321.23 and 321.45 shall sell or otherwise dispose of a registered *vehicle* or a vehicle subject to registration without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser.

Iowa Code § 321.67(1) (1983) (emphasis added). A certificate of title is also required for specially constructed, reconstructed, or foreign vehicles:

In the event the *vehicle* to be registered is a specially constructed, reconstructed, or foreign vehicle, such fact shall be stated in the application. A fee of two dollars shall be paid by the person making such application upon issuance of a certificate of title by the county treasurer. With reference to every specially constructed or reconstructed motor vehicle subject to registration the application shall be accompanied by a statement from the department authorizing such motor vehicle to be titled and registered in this state. The department shall cause a physical inspection to be made of all specially constructed or reconstructed motor vehicles, upon application therefor by the owner thereof, to determine whether such motor vehicle is in a safe operating condition and that the integral component parts thereof are properly identified and that the rightful ownership is established before issuing such owner the authority to have the motor vehicle registered and titled as herein provided. With reference to every foreign vehicle which has been registered heretofore outside of this state the owner shall surrender to the treasurer all registration plates, registration cards, and certificates of title, or, if vehicle to be registered is from a nontitle state, such evidence of foreign registration and ownership as may be prescribed by the department except as provided in subsection 2 hereof.

Iowa Code § 321.23(1) (1983) (emphasis added). Dealers must also obtain a certificate of title for vehicles acquired for resale:

Any foreign registered *vehicle* purchased or otherwise acquired by a dealer for the purpose of resale shall be issued a certificate of title thereto by the county treasurer of the dealer's residence upon proper application therefor as provided in this chapter and upon payment of a fee of two dollars and such dealer shall be exempt from the payment of any and all registration fees for such vehicle. Such application for certificate of title shall be made within forty-eight hours after said vehicle comes within the border of the state.

Iowa Code § 321.48(2) (1983) (emphasis added).

The common feature of all of the above statutes is that there must be a "vehicle" or "motor vehicle" involved. These terms are defined by Iowa Code sections 321.1(1) and (2) as follows:

1. "Vehicle" means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway. "Vehicle" does not include:

a. Any device moved by human power.

b. Any device used exclusively upon stationary rails or tracks.

c. Any integral part of a truck tractor or road tractor which is mounted on the frame of the truck tractor or road tractor immediately behind the cab and which may be used to transport persons and property but which cannot be drawn upon the highway by the truck tractor or another motor vehicle.

d. Any steering axle, dolly, auxiliary axle or other integral part of another vehicle which in and of itself is incapable of commercially transporting any person or property but is used primarily to support another vehicle.

2. "Motor vehicle" means every vehicle which is self-propelled but not including vehicles known as trackless trolleys which are propelled by electric power obtained from overhead trolley wires, but not operated upon rails. The terms "car," "new car," "used car" or "automobile" shall be synonymous with the term "motor vehicle."

Furthermore, Iowa Code section 321.1(40) defines "completed motor vehicle" as follows:

"Completed motor vehicle" means a *motor vehicle* which does not require any additional manufacturing operations to perform its intended function except the addition of readily attachable equipment, components or minor finishing operations. (emphasis added).

We must therefore determine whether the parts assembly involved in this case was a "vehicle" or "motor vehicle." The district court held that the parts sold by Habhab to Lamb were not within the statutory definitions of vehicle and motor vehicle. We agree. The Code contemplates that a vehicle or motor vehicle will be an apparatus by which people or property may be transported. Specifically excluded is a device which must be moved by human power. The assembly of parts at issue here was incapable of movement since any means of propulsion (such as an engine) was lacking. These parts, even when assembled, are not capable of transporting people or property.

The parts assembly here was also not a "completed motor vehicle." Such a conclusion is logically necessary based on our conclusion that the parts did not constitute a "motor vehicle." Furthermore, the code section defining "completed motor vehicle" states that such a motor vehicle would "not require any additional manufacturing operations to perform its intended function except the addition of readily attachable equipment ... or minor finishing operations." We believe that where the parts assembly here lacked several major elements, such as an engine, battery, and fuel tank, there are more than "minor finishing operations" required to allow the assembly to perform its intended function.

Because the parts assembly was not a "vehicle" or "motor vehicle" within the statutory definitions, there was no obligation for Habhab to provide a certificate of title to Lamb. Accordingly, there is no bond coverage for that transaction and consequently, Nelson is not entitled to any indemnity.

AFFIRMED.