**In the Matter of: David L. BAILEY, Julia A. Bailey, Debtors**

**No. 02–02229–LMJ7.**

United States Bankruptcy Court, S.D. Iowa.

Sept. 27, 2004.

---

**32.** $2,217.85 + $6,487.00 = $8,704.85.

Steven P. Wandro, Des Moines, IA, for Debtor.

Anita L. Shodeen, Chapter 7 Trustee, Des Moines.

## MEMORANDUM OF DECISION

LEE M. JACKWIG, Bankruptcy Judge.

Chapter 7 Debtors David L. Bailey and Julia A. Bailey ("Debtors") claim their 1932 Ford Coupe ("Coupe") and 1938 Ford Sedan ("Sedan") exempt from the bankruptcy estate. Alleging the exemptions are not proper under Iowa Code section 627.6(9)(b), Chapter 7 Trustee Anita L. Shodeen ("Trustee") objects.

The parties submitted a stipulation of facts in lieu of presenting evidence at a courtroom hearing. Having reviewed the stipulation and the briefs filed by the parties, the Court now enters its decision in favor of the Debtors.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the United States District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(B).

## BACKGROUND

The parties stipulate that the following facts are undisputed:

1. The Debtors filed for Chapter 7 bankruptcy protection on or about April 25, 2002.

2. That Debtors filed Schedules B and C in the bankruptcy case on that same date. On Schedule B, Debtors listed a 1938 Ford Sedan (unfinished) valued at $5,000 and a 1932 Ford Coupe (unfinished), also valued at $5,000.

3. On Amended Schedule C of the Bankruptcy Petition, Debtors claimed

752

the 1938 Ford Sedan and the 1932 Ford Coupe as exempt under Iowa Code Section 627.6(9)(b). Debtors claim the maximum exemption amount of $5,000 for both the 1938 Ford Sedan and the 1932 Ford Coupe.

4. That on or about August 22, 2002, the Trustee filed an Objection to Debtors' Claims of Exemptions. In her Objection, the Trustee claimed that the Debtors are not entitled to the exemption of the two vehicles listed above.

5. On or about August 30, 2002, Debtors filed an Objection to Trustee's Objection to Debtors' Claims of Exemption.

6. At the time of the filing of the bankruptcy, neither of the vehicles were operable because they were disassembled, however the vehicles could be operable with work.

7. The Debtors have both title and registrations for the vehicles.

8. The Trustee hired Jim McDonald, a private investigator, to inspect the two vehicles. On or about September 11, 2002, Mr. McDonald did inspect the vehicles and prepared a written report as to his opinion on the vehicles.

9. On Schedule B, the Debtors listed other vehicles, a 1997 Dodge Pick-up, a 1988 Chevy Camero, and a 1995 motor-

cycle, which they owned at the time of the filing of the bankruptcy petition. Those vehicles had no equity as they secured a loan to Libertyville Bank. See Schedule D.[1] Recently, the Debtors have made arrangements with the Bank for retention of these vehicles.

(Stipulation of Facts at 1–2.) To the Stipulation the parties attached: Exhibit A (1932 Ford Coupe Certificate of Title),[2] Exhibit B (1938 Ford Sedan Certificate of Title),[3] and Exhibit C (Renewal Registration Receipts)[4] in support of paragraph seven; and Exhibit D (Report on Inspection of Vehicles by Jim McDonald)[5] in support of paragraph eight.

After this contested matter was under advisement, the Trustee filed a notice of intent to sell the Coupe and the Sedan to one Valenti J. Biondi of Biondi's Service Center in Quincy, Massachusetts for $23,000.00 cash upon delivery. No party in interest objected to the May 23, 2003 notice. Accordingly, on June 18, 2003, the Court entered an order approving the sale.

## APPLICABLE LAW

11 U.S.C. section 522(b) permits individual states to opt out of the federal exemption scheme.[6] Iowa has done so in

---

1. Schedule D (Creditors Holding Secured Claims) indicates the cumulative value of the collateral is $20,150.00 and Libertyville Bank's claim is $39,210.77.

2. The certificate was issued on May 17, 1990 and identifies David Bailey as the sole owner.

3. The certificate is a replacement title that was issued on January 29, 2002. It names Julia Bailey as the sole owner and replaces a previous title that named Julia Bailey as the sole owner.

4. David Bailey renewed the registration on the Coupe, effective December 22, 2000. Julia Bailey renewed the registration on the Sedan, effective July 16, 2002.

5. The report contains details about the style and condition of the two automobiles and provides an estimation of their value.

6. 11 U.S.C. section 522(b) provides:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not

Iowa Code section 627.10.[7] Accordingly, this Court must apply Iowa law in ruling on the pending exemption controversy.

■ Iowa Code section 627.6 provides, in relevant part, that:

A debtor who is a resident of this state may hold exempt from execution the following property:

. . . . .

9. Any combination of the following, not to exceed a value of five thousand dollars in the aggregate:

a. Musical instruments, not including radios, television sets, or record or tape playing machines, held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

b. *One motor vehicle.*

c. In the event of a bankruptcy proceeding, the debtor's interest in accrued wages and in state and federal tax refunds as of the date of filing of the petition in bankruptcy, not to exceed one thousand dollars in the aggregate. This exemption is in addition to the limitations contained in sections 642.21 and 537.5105.

Iowa Code § 627.6(9)(b) (emphasis added). Since the Debtors do not claim any property exempt under Iowa Code section

627.6(9)(a) or (c), each Debtor may claim one motor vehicle exempt up to $5,000.00 in value. The Trustee has the burden of proving the exemptions were not properly claimed.[8]

■ In construing Iowa Code section 627.6(9)(b), this Court is mindful of the well-settled proposition that Iowa's exemption statutes must be liberally construed. *Frudden Lumber Co. v. Clifton,* 183 N.W.2d 201, 203 (Iowa 1971). Yet, that does not mean this Court may depart substantially from the express language of the exemption statutes or extend the legislative grant. *Matter of Hahn,* 5 B.R. 242, 244 (Bankr.S.D.Iowa 1980), *citing Wertz v. Hale,* 212 Iowa 294, 234 N.W. 534 (1931) and *Iowa Methodist Hospital v. Long,* 234 Iowa 843, 12 N.W.2d 171 (1943).

## DISCUSSION

■ It is undisputed that the Coupe and the Sedan were disassembled on the date of filing but that they could have been made operable with some work. It is also undisputed that the Debtors were able to retain a pick-up, a car and a motorcycle by working out an agreement with the creditor that held a security interest in those vehicles.

---

elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; . . . .

11 U.S.C. § 522(b).

**7.** Iowa Code section 627.10 provides:

A debtor to whom the law of this state applies on the date of filing of a petition in bankruptcy is not entitled to elect to exempt from property of the bankruptcy estate the property that is specified in 11 U.S.C. sec. 522(d) (1979). This section is enacted for the purpose set forth in 11 U.S.C. sec. 522(b)(1)(1979).

Iowa Code § 627.10.

**8.** Federal Rule of Bankruptcy Procedure 4003(c) provides: "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections."

The Trustee contends that the Coupe and the Sedan are not properly claimed exempt for two reasons.[9] First, the Trustee argues that the Coupe and the Sedan can not be equated with "motor vehicles" because they were incapable of being self-propelled as of the commencement of the case. Second, characterizing the Coupe and the Sedan as collector items, the Trustee maintains that the Debtors do not need those vehicles for their fresh start.

The Debtors counter that the Coupe and the Sedan should be construed as "motor vehicles" as of the petition date because they were capable of transporting people and property once completely reassembled. They further argue that there is nothing in Iowa Code section 627.6(9)(b) which qualifies the exemption beyond "one motor vehicle."

## I. The Arguments Based on Statutory Definitions.

In support of their respective positions, both parties turn to the definitions of "vehicle" and "motor vehicle" found in Iowa Code Chapter 321 (Motor Vehicles and Law of the Road). The Debtors also rely upon the definition of "motor vehicle" contained in Iowa Code Chapter 321A (Motor Vehicle Financial Responsibility).

With respect to the definition of the word "vehicle," Iowa Code section 321.1(90) provides:

"Vehicle" means every devise in, upon, or by which any person or property is or may be transported or drawn upon a highway. "Vehicle" does not include:

a. Any device moved by human power.

b. Any device used exclusively upon stationary rails or tracks.

c. Any integral part of a truck tractor or road tractor which is mounted on the frame of the truck tractor or road tractor immediately behind the cab and which may be used to transport persons and property but which cannot be drawn upon the highway by the truck tractor or another motor vehicle.

d. Any steering axle, dolly, auxiliary axle, or other integral part of another vehicle which in and of itself is incapable of commercially transporting any person or property but is used primarily to support another vehicle.

Iowa Code § 321.1(90).

With respect to the definition of the word "motor vehicle," Iowa Code section 321.1(42)(a) describes "[m]otor vehicle" as "a vehicle which is self-propelled, but not including vehicles known as trackless trolleys which are propelled by electric power obtained from overhead trolley wires and are not operated upon rails." Iowa Code section 321A.1(5) is similar except that it adds a sentence making the terms "car" and "automobile" synonymous with "motor vehicle."[10]

In *Nelson v. Merchants Bonding Co.,* 425 N.W.2d 433, 434 (Iowa App.1988), a case cited by the Trustee, the Iowa Court of Appeals confronted the issue of whether an assembly of truck parts sold to a buyer

9. In her written objection, the Trustee also claimed that the Coupe and the Sedan were not properly claimed exempt because the vehicles were not registered. Apparently satisfied that Exhibit C resolved that issue, the Trustee stipulated that the Debtors had registrations for the Coupe and the Sedan and, accordingly, did not address the matter of registration in her brief.

10. Iowa Code section 321A.1(5) defines "motor vehicle" as "every vehicle which is self-propelled but not including vehicles known as trackless trolleys which are propelled by electric power obtained from overhead trolley wires, but not operated upon rails. The term 'car' or 'automobile' shall be synonymous with the term 'motor vehicle'."

constituted a "vehicle," thereby requiring the seller to make application for a certificate of title pursuant to Iowa Code section 321.48(2). Whereas a cab, frame, chassis, front axle, and rear axle housing comprised the parts sold, the parts missing were the engine, transmission, both rear-end assemblies, drive shaft, wheels and tires, exhaust system, gear box, fuel tanks, and batteries. After discussing the definitions of "vehicle" and "motor vehicle" found in Chapter 321 of the Iowa Code,[11] the appellate court agreed with the district court that the parts sold did not fall within either statutory definition. It reasoned:

> The Code contemplates that a vehicle or motor vehicle will be an apparatus by which people or property may be transported. Specifically excluded is a device which must be moved by human power. The assembly of parts at issue here was incapable of movement since any means of propulsion (such as an engine) was lacking. These parts, even when assembled, are not capable of transporting people or property.

*Id.* at 436

Having also cited to the statutory definition of "completed motor vehicle" found in Chapter 321 of the Iowa Code,[12] the *Nelson* Court observed:

> The parts assembly here was also not a "completed motor vehicle." Such a conclusion is logically necessary based on our conclusion that the parts did not constitute a "motor vehicle." Furthermore, the code section defining "completed motor vehicle" states that such a motor vehicle would "not require any additional manufacturing operations to perform its intended function except the addition of readily attachable equipment . . . or minor finishing operations." We believe that where the parts assembly here lacked several major elements, such as an engine, battery, and fuel tank, there are more than "minor finishing operations" required to allow the assembly to perform its intended function.

*Id.*

Assuming the statutory definitions and case law discussed above controlled the outcome of this controversy, Jim McDonald's report would support a finding that the Coupe and the Sedan were "vehicles" and "motor vehicles." Arguably it could even support a finding that they were "completed motor vehicles." That is, as for the 1932 Ford Coupe, Mr. McDonald states that the car had developed a shake when the brakes were applied, the motor smoked and needed some work. On the date of the inspection, the hood, valve covers, air cleaner, front brake calipers, rotors and front wheels were off the vehicle but David Bailey assured him all parts were present. Mr. McDonald indicated that he was able to see most of the parts during the visit. (Exhibit D at 1.) Hence,

---

11. At the time the *Nelson* decision was rendered, the definition for "vehicle" was found in Iowa Code section 321.1(1) and the definition for "motor vehicle" was found in Iowa Code section 321.1(2). The wording was identical to the sections under consideration today except that section 321.1(2) contained the following additional sentence: "The terms 'car,' 'new car,' 'used car' or 'automobile' shall be synonymous with the term 'motor vehicle'."

12. At the time the *Nelson* decision was rendered, the definition for "completed motor vehicle" was found in Iowa Code section 321.1(40). Today, the identical provision is found in the second paragraph of Iowa Code section 321.1(37) that describes a "completed motor vehicle" as "a motor vehicle which does not require any additional manufacturing operations to perform its intended function except the addition of readily attachable equipment, components, or minor finishing operations."

this Court could find that the Coupe should be viewed as a self-propelled vehicle that would be capable of transporting or drawing persons and property upon the highway once the missing parts were reassembled and the necessary repairs to the brakes and motor were completed.

As for the 1938 Ford Sedan, Mr. McDonald reported that it too was disassembled as of the date of the inspection but once again Mr. Bailey told him "all of the necessary parts to make it a complete car are there." (Exhibit D at 1). After describing and complementing the work done on the car already, Mr. McDonald summarized its status as follows:

> This was a running, driving car that was disassembled to be repainted, restyled and re-engineered. The hard work is done; all that remains is to finish the work that has been started. The car will need to be painted and reupholstered. This would be a very desirable car for anyone interested in late 30's Ford Street Rod.

(Exhibit D at 2.) Thus, this Court could also find that the Sedan should be viewed as a "motor vehicle" that would be ready for the road upon reassembly and completion of the identified finishing operations. Put simply, as defined and interpreted for the purpose of Chapter 321 of the Iowa Code, the requirement that a motor vehicle be "self-propelled" need not be equated with "currently operable."

It must be noted however that the introductory sentence of Iowa Code section 321.1 states: "The following words and phrases when used in this chapter shall, for the purpose of this chapter, have the meanings respectively ascribed to them." Unless incorporated by reference, definitions contained in section 321.1 do not apply to other chapters of the Iowa Code.[13]

## II. The Analysis Based on Statutory Construction

 Iowa Code Chapter 627 (Exemptions) does not contain a section defining the words and phrases used in that chapter and does not incorporate by reference the definitions found in any other chapter of the Iowa Code. "Where the legislature has not defined the words of the statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 761 (Iowa 1998). The goal in interpreting a statute "is to discover the true intention of the legislature, considering the clearly stated objects and purposes involved." *Id.*

The parties do not cite and this Court has not found any case law discussing whether a disassembled or otherwise inoperable motor vehicle is a "motor vehicle" for the purpose of the Iowa exemption statute or, for that matter, of any state exemption statute similar to the Iowa statute. Likewise, it does not appear that this issue has been addressed in any case law analyzing 11 U.S.C. section 522(d)(2) that permits debtors in states that have not opted out of the federal exemption scheme to claim an exemption in "[t]he debtor's interest, not to exceed $2,775 in value, in *one motor vehicle.*" 11 U.S.C. § 522(d)(2) (emphasis added).

---

13. In *Matter of Webb,* No. 86–02827–DJ slip. op. at 6 (Bankr.S.D.Iowa Sept. 28, 1987), this Court declined to consider the definition of "motor vehicle" contained in Iowa Code Chapter 321. In *Matter of Ackerman,* No. 87–02463–WJ slip. op. at 6 (Bankr.S.D.Iowa Feb. 2, 1988), this Court made passing reference to the definition of "motor vehicle" in Iowa Code Chapter 3211.1(7) (1987) (Motor Vehicle Service Contracts), now Iowa Code section 516E.1(3).

■ Hence, the Court turns to section 4.1 (Rules) of Iowa Code Chapter 4 (Construction of Statutes) that states:

> In the construction of the statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute:
>
> . . . . .
>
> (38) *Words and phrases.* Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such a meaning.

Iowa Code § 4.1(38). Consistent with this rule, the Iowa Supreme Court has held that "statutory words are presumed to be used in their ordinary and commonly understood sense." *City of Sioux City v. Iowa Dep't of Revenue & Fin.*, 666 N.W.2d 587, 590 (Iowa 2003).

The Merriam–Webster's Collegiate Dictionary defines "motor vehicle" as "an automotive vehicle not operated on rails; *esp:* one with rubber tires for use on highways." Merriam–Webster's Collegiate Dictionary 760 (10th ed.2004).[14] In turn, it describes "automotive" as "of, relating to, or concerned with self-propelled vehicles or machines" and "vehicle," in the context under consideration, as "a means of carrying or transporting something." *Id.* at 79 and 1309. Finally, for vehicles, it

gives "self-propelled" the definition of "containing within itself the means for its own propulsion." *Id.* at 1061.

The dictionary definition of "self-propelled" lends some support to the Trustee's argument because neither the Coupe nor the Sedan contained within themselves all the parts necessary for their own propulsion on the petition date. However, the parts were located nearby and there is nothing in the record to indicate the Coupe and the Sedan would not be operable once those parts were reassembled. To conclude that the concept of "self-propelled" requires every part necessary for propulsion be in place and in functioning order would lead to results repugnant to the exemption scheme. For example, a vehicle with a removed battery or a flat tire as of the petition date could not be claimed exempt under section 627.6(9)(b). Similarly any argument that the Sedan was not a "vehicle" because the passenger compartment needed to be reupholstered or that the Coupe was not a "motor vehicle" because the front wheels were off as of the petition date must fail.

Hence, for the purpose of the Iowa exemption statute, the Court concludes that the ordinary and common meaning of the term "motor vehicle" includes an inoperable vehicle that can be made operable by reassembling one of more of its parts or by repairing one or more of its parts. As previously discussed, the evidence submitted in this case supports finding that the Coupe could be made operable upon reassembly of the removed parts and upon

14. The current edition of Black's Law Dictionary does not define "motor vehicle;" however at least one previous edition described the term as meaning:

> Any self-propelled "vehicle", defined as including every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human or muscular power or used exclusively upon stationary rails or trades. The term "motor vehicles", although sometimes synonymous with or limited to "automobiles," often has a broader meaning, and includes not only ordinary automobiles, but also motor buses and trucks, as well as motorcycles.

Black's Law Dictionary 1164–65 (Rev. 4th ed.1968).

repairs to the brakes and motor. Likewise, the Sedan could be made operable upon reassembly of the removed parts and completion of certain finishing operations.

 As for the Trustee's concern that exemption of the Coupe and the Sedan will amount to an abuse of the fresh start concept because the vehicles are being exempted primarily for investment purposes rather than for transportation purposes, this Court acknowledges that the Iowa Supreme Court has stated that the "purpose underlying all exemption legislation is to secure to the unfortunate debtor the means to support himself and the family." *Shepard v. Findley*, 204 Iowa 107, 214 N.W. 676, 678 (Iowa 1927). However, the appellate court has also cautioned that "in searching for legislative intent, we are bound by what the legislature said, not by what it should or might have said." *Krull v. Thermogas Co.*, 522 N.W.2d 607, 612 (Iowa 1994).

In looking at section 627.6(9) in its entirety, one sees that the Iowa legislature used qualifying language in the other exemption categories covered by that section. That is, a debtor may claim musical instruments "held primarily for the personal, family, or household use of the debtor or a dependent of the debtor" exempt. Iowa Code § 627.6(9)(a). The exemption in accrued wages and in state and federal tax refunds is "[i]n the event of a bankruptcy proceeding." Iowa Code § 627.6(9)(c).

Then looking at some of the other general exemptions, one finds a variety of qualifying language. *See, e.g.,* Iowa Code § 627.6(1) (wearing apparel limited to that "kept for actual use" and, in conjunction with the storage items to hold the wearing apparel, limited to $1,000.00 in the aggregate); [15] Iowa Code § 627.6(5) (household furnishings, household goods, and appliances qualified like musical instruments and limited to $2,000.00 in the aggregate); [16] Iowa Code § 627.6(10) (tools of trade for profession or occupation, other than farming, only if engaged in that profession or occupation and limited to $10,000.00 in the aggregate); [17] Iowa code § 627.6(11) (tools of trade and livestock and feed for farming only if engaged in farming and, among other qualifications, limited to $10,000.00 in the aggregate).[18]

15. Iowa Code section 627.6(1) provides the following exemption:

All wearing apparel of the debtor and the debtor's dependents kept for actual use and the trunks or other receptacles necessary for the wearing apparel, not to exceed in value one thousand dollars in the aggregate. In addition, the debtor's interest in any wedding or engagement ring owned and received by the debtor or the debtor's dependents on or before the date of marriage.
Iowa Code § 627.6(1).

16. Iowa Code section 627.6(5) provides the following exemption: "The debtor's interest in household furnishings, household goods, and appliances held primarily for the personal, family, or household use of the debtor or a dependent of the debtor, not to exceed in value two thousand dollars in the aggregate."

17. Iowa Code section 627.6(10) provides the following exemption: "If the debtor is engaged in any profession or occupation other than farming, the proper implements, professional books, or tools of the trade of the debtor or a dependent of the debtor, not to exceed in value ten thousand dollars in the aggregate."

18. Iowa Code section 627.6(11) provides the following exemption:

If the debtor is engaged in farming and does not exercise the delay of the enforceability of a deficiency judgment or general execution under section 654.6 in relation to the execution under which the exemption is claimed, any combination of the following, not to exceed a value of ten thousand dollars in the aggregate:
a. Implements and equipment reasonably related to a normal farming operation.

By contrast, section 627.6(9)(b) only limits a debtor's motor vehicle exemption by restricting the value of the claim to one vehicle. Then the value that can be claimed exempt is subject to the $5,000.00 limitation in the aggregate with the other exemptions covered by section 627.6(9). The Iowa Legislature knew how to draft the exemption to restrict it to a motor vehicle actually used or primarily used for transportation purposes. It did not do so.

## CONCLUSION

WHEREFORE, for the reasons set forth in this Memorandum of Decision, the Court finds that:

(1) The Trustee has not met her burden of proving that the 1932 Ford Coupe and the 1938 Ford Sedan are not properly claim exempt under Iowa Code section 627.6(9)(b) and, accordingly, her objection must be overruled;

(2) David L. Bailey may exempt up to $5,000.00 of the proceeds related to the sale of the 1932 Ford Coupe; and

(3) Julia A. Bailey may exempt up to $5,000.00 of the proceeds related to the sale of the 1938 Ford Sedan.

A separate Order shall be entered accordingly.

## ORDER

In accordance with the Memorandum of Decision entered in this Chapter 7 case today, it is hereby ORDERED that:

(1) The Trustee's objection to the Debtors' claim of exemption in a 1932 Ford Coupe and a 1938 Ford Sedan is overruled;

> This exemption is in addition to a motor vehicle held exempt under subsection 9. b. Livestock and feed for the livestock reasonably related to a normal farming operation.

(2) David L. Bailey may exempt up to $5,000.00 of the proceeds related to the sale of the 1932 Ford Coupe; and

(3) Julia A. Bailey may exempt up to $5,000.00 of the proceeds related to the sale of the 1938 Ford Sedan.